

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR 10 2002

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ENTERED
APR 10 2002
U.S.D.C.

ASSOCIATION FOR DISABLED     *
AMERICANS, INC., DANIEL RUIZ and   *
JORGE LUIS RODRIGUEZ, On Their Own   *
A behalf and On Behalf of All Other    *
Individuals Similarly Situated,      *
              *
    Plaintiffs,        *
              *
v.              *    Civil No. 3:01-CV-0230-H
              *
7-ELEVEN, INC.,        *
              *
    Defendant.       *
              *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for final certification of a class and approval of a consent

decree. The Court preliminarily approved the settlement class definition and proposed consent

decree by its Order of August 28, 2001. The Court conducted a fairness hearing on December

17 & 18, 2001, and the issue of final certification is now ripe for decision.[1]

---

[1] The following individuals and groups filed objections to the class definition and
proposed consent decree: (1) the American Council of the Blind, California Council of the Blind,
Don Brown, Kathy Martinez, Kelly Pierce, and Lillian Scaife ("Council of the Blind"); (2)
Twelve State Protection and Advocacy Agencies ("Twelve State Agencies"); and (3) Class
Member Carrie Ann Lucas. In response to these objections, the parties filed their Joint
Consolidated Response; the Council of the Blind and the Twelve State Agencies have each filed
Replies in Support of their Objections. Since the fairness hearing, the Court has received a
Notice of Recent Supplement Authority from the plaintiffs, filed February 21, 2002, and a
Response to that Supplemental Authority by Ms. Elaine Feingold, Counsel for the Council of the
Blind, filed February 28, 2002.
  The objections, taken as a whole, argue that the proposed consent decree is unfair to
members of the class, inconsistent with the ADA and the regulations promulgated thereunder,
and that the notice to class members was defective or lacking. With regard to this last point, the
Council of the Blind stresses that notice was defective as to many members of the putative class.

## I.    BACKGROUND

The present suit was filed by the Association for Disabled Americans, Inc. ("the Association"), Daniel Ruiz and Jorge Luis Rodriguez, on their own behalf and behalf of all those similarly situated, against 7-Eleven, Inc. ("7-11"). Plaintiffs seek injunctive relief based on 7-11's alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.* The Association and the two individual plaintiffs are Florida residents. *See* Complaint, filed February 2, 2001, ¶¶ 2-3. The defendant, 7-11, is based in Dallas. The evidence, meager though it is, indicates that the Association's membership includes those with visual, hearing, and mobility impairments. *See* Dec. 17, 2001 Transcript ("TR. 1"), at 87. The evidence also indicates that Plaintiff Ruiz is a paraplegic and that Plaintiff Rodriguez is a quadriplegic. *See id.* at 99-100. The plaintiffs seek class certification pursuant to FED. R. CIV. P. 23(b)(2) to adjudicate all disabled persons' Title III claims against 7-11. *See* Unopposed Motion for Order Granting Approval of Proposed Consent Decree, filed July 24, 2001. The Court preliminarily certified a class consisting of:

> All persons who have or claim they have, or will have or will claim they have, been denied full and equal access to or been discriminated against under Title III of the ADA or regulations promulgated thereunder, or under similar federal or state statutory, administrative, regulatory or common law relating to accessibility, at or in connection with one or more 7-Eleven stores and gas station facilities in the United States, because they have an impairment that substantially limits a major life function including but not limited to individuals with mobility disabilities, dexterity, vision, or hearing disabilities.

Order, filed August 28, 2001, at 2.

The size of this huge putative class is estimated to be between 43 and 53 million persons. *See* Complaint ¶ 6(i); Objections by Twelve State Agencies, filed October 22, 2001, at 4.

The Council of the Blind challenges the plaintiffs' standing to assert the accessibility

2

claims of all individuals that qualify as "disabled" under federal and state law. *See* Dec. 18,

2001 Transcript ("TR. 2"), at 35-38. The Court agrees with the Council of the Blind on this

point, and, for the reasons outlined in this opinion, final certification of the class is DENIED.

## III.    STANDING

The plaintiffs' standing presents a threshold challenge which the Court must address

before determining the propriety of class certification. *See* 1 HERBERT B. NEWBERG & ALBA

CONTE, NEWBERG ON CLASS ACTIONS §§ 2.05-.07 (3d ed. 1992) [hereinafter NEWBERG] (stating

that the threshold standing issue is distinct from the capacity to represent a class under FED. R.

CIV. P. 23). Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual

cases and controversies. U.S. CONST. art. III, § 2, cl. 1; *United States Parole Comm'n v.*

*Geraghty*, 445 U.S. 388, 395 (1980). The case-or-controversy requirement serves to limit the

business of federal courts to "questions presented in the adversary context and in a form

historically viewed as capable of resolution through the judicial process." *Geraghty*, 445 U.S.

396 (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *Dallas Gay Alliance v. Dallas County*

*Hosp. Dist.*, 719 F.Supp. 1380, 1383 (N.D. Tex. 1989) (Sanders, J.).

The case-or-controversy limitation of Article III requires that a party invoking federal

jurisdiction have standing—that is, a personal stake in the outcome. *See, e.g., Baker v. Carr*, 369

U.S. 186, 204 (1962). In order to satisfy this requirement and demonstrate Article III standing, a

plaintiff has the burden of proving the following three requirements: (1) that he or she suffered

an "injury in fact;" (2) a causal relationship between the injury and the challenged conduct; and

(3) that the injury will likely be "redressed by a favorable decision." *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Simon v. Eastern Ky. Welfare Rights Org.*, 426

U.S. 26, 38 (1976); *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001). The

3

standing question focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Simon*, 426 U.S. at 38 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (emphasis in original). At a minimum, Article III requires a party invoking federal jurisdiction to show that he has personally suffered some actual injury or is in immediate danger of sustaining some direct injury in fact as a result of the allegedly illegal conduct of the defendant. *Lujan*, 504 U.S. at 560-61; *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Even though standing principles were developed outside the class action context, the limitations of Article III apply to class actions. *Dallas Gay Alliance*, 719 F.Supp. at 1384; *see also* 1 NEWBERG § 2.06. If none of the named plaintiffs seeking to represent a purported class establishes the requisite case-or-controversy with the defendant, then none may seek relief on behalf of himself or any other member of the purported class. *O'Shea*, 414 U.S. at 494; *see also* 1 NEWBERG § 2.06. In the context of an ADA class action, a plaintiff qualifying as "disabled" under the ADA only has standing to assert those claims related to his disability. *See Lujan*, 504 U.S. at 560 n.1 (noting that "particularized injury" means an injury that affects the plaintiff in an individual and personal way); *Bomer*, 274 F.3d at 218-19 (noting the same); *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000) (stating that to allow a blind plaintiff standing to assert claims on behalf of all individuals that qualify as disabled under the ADA would expand the standing doctrine beyond the limits of Article III). Because standing is determined at the lawsuit's commencement, the Court's standing inquiry must be guided by the facts of the case as they existed at the time the suit was filed. *Lujan*, 504 U.S. at 570-71 n.5 (plurality opinion).

With these standing requirements in mind, the Court now turns to consider the plaintiffs'

4

standing to raise the claims of the class defined by the Court's August 28 Order.

### 1.     Standing Under the ADA

The plaintiffs are seeking to represent a class made up of all persons who have, claim they have, or will claim they have a claim of discrimination against 7-11 under Title III of the ADA. Stated another way, the plaintiffs seek to adjudicate all of the Title III claims that disabled persons have against 7-11.

As previously stated, the plaintiffs are two individuals and one organization. Though the plaintiffs bear the burden of demonstrating their standing to seek relief on their asserted claims, the plaintiffs have presented few factual allegations, and even less evidence, on the standing issue. Turning first to the two individual plaintiffs, the Complaint lacks any statement of their disabilities; instead, it includes only conclusory allegations such as "[the individual plaintiffs] are individuals with disabilities under and as defined by the ADA." Complaint ¶ 3; *see generally* Complaint. There was testimony at the fairness hearing that Mr. Ruiz is a paraplegic and that Mr. Rodriguez is a quadriplegic, yet that testimony was elicited by the Court, not by the plaintiffs. *See* TR. 1, at 99-100. Nonetheless, as that testimony was not challenged or contradicted, the Court finds that both Ruiz and Rodriguez qualify as mobility impaired under the ADA, and were so qualified at the time this suit was filed.

Similar to the individual plaintiffs' disabilities, the record largely lacks factual allegations and supporting evidence of the Association members' disabilities. In order to have standing to assert Title III claims in this Court, the Association must demonstrate, *inter alia*, that its individual members could raise these claims on their own behalf. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Bomer*, 274 F.3d at 219 n.5. The Complaint alleges that the Association's membership includes individuals with mobility, vision, and hearing

5

impairments, and testimony at the fairness hearing supported these allegations. *See* Complaint ¶ 10; TR. 1, at 87. The Complaint also alleges that the Association's members include those with "other physical and mental disabilities." Complaint ¶ 10. However, the only evidence in the record of the Association members' disabilities is that the membership includes those with hearing, visual, and mobility impairments. *See* TR. 1, at 87.[2] The bald allegation of "other physical and mental disabilities" is far too general to demonstrate that the Association's members have a personal stake in the outcome of the Title III claims of every person that qualifies as disabled under the ADA. *See, e.g., Simon*, 426 U.S. at 38.

Taken together, the two individual plaintiffs and the Association have demonstrated the requisite standing to pursue Title III claims against 7-11 related to mobility, visual, and hearing impairments and satisfied the case-in-controversy requirements of Article III with regard to these disabilities. *See Geraghty*, 445 U.S. at 396; *Simon*, 426 U.S. at 38. The plaintiffs also have standing to pursue Title III claims on behalf of others with discrimination claims against 7-11 related to the plaintiffs' own disabilities. *See Lujan*, 504 U.S. at 560 n.1; *Bomer*, 274 F.3d at 218-19; *Steger*, 228 F.3d at 893; 1 NEWBERG § 2.06.

While the plaintiffs have standing to pursue Title III claims related to their disabilities, the Court must reject plaintiffs' claim that this limited standing confers carte blanche standing to pursue the Title III claims that every disabled person may have against 7-11. In this regard, the Court finds the Eighth Circuit's opinion in *Steger v. Franco, Inc.* persuasive. In that case, five

---

[2]Despite the Association counsel's claim that the Association includes individuals "with all sorts of disabilities," the only evidence of the memberships' disabilities points to members with hearing, visual, and mobility impairments. *See* TR. 2, at 19; TR. 1, at 87. In this regard, the Court notes that the record largely lacks any evidence related to the Association and its membership. The same lack of evidence applies to the individual plaintiffs as well.

plaintiffs sued to bring an office building into ADA compliance; all of the plaintiffs qualified as disabled under the ADA. After affirming the dismissal of four plaintiffs who lacked standing because they failed to demonstrate an injury in fact, the court focused its discussion on the final plaintiff, Patrick Burch, who was blind. *Steger*, 228 F.3d at 891-93. After finding that Burch had demonstrated an injury in fact and standing to sue under the ADA, the court addressed the scope of Burch's standing under the ADA. *Id.* Burch argued that since he was a qualified individual with a disability under the ADA, he had standing to seek relief for all ADA violations in the office building at issue. *Id.* The court, however, disagreed. It noted that in order to satisfy the injury in fact requirement, the party seeking relief must be himself among the injured. *Id.* at 893. With regard to ADA violations related to blindness, Burch was clearly among the injured; however, Burch was not among the injured with regard to ADA violations unrelated to blindness. *Id.* Granting Burch standing to seek relief for every ADA violation on behalf of all disabled individuals "would expand the standing doctrine beyond the limits of Article III." *Id.*

As with the plaintiffs in *Steger*, the present plaintiffs request that the Court grant them standing to pursue claims beyond the scope of Article III. As noted, the plaintiffs have, at most, standing to pursue claims related to visual, hearing, and mobility impairments. However, it is undisputed that disabilities beyond these three categories are recognized and protected by the ADA. To allow these plaintiffs to adjudicate all discrimination claims against 7-11 arising under Title III exceeds the limitations imposed on this Court by Article III. This is true because these plaintiffs have only barely demonstrated an injury in fact with regard to ADA violations related to hearing, visual, and mobility impairments. In other words, plaintiffs are only among the injured for ADA violations related to their own disabilities. While other members of the putative class may have standing to pursue ADA claims related to disabilities beyond those held

7

by the plaintiffs, a named plaintiff cannot acquire standing to assert a claim by bringing a claim on behalf of others who would have standing by virtue of their injury in fact if they were named plaintiffs. *See* 1 NEWBERG § 2.06. In short, "[s]tanding cannot be acquired through the back door of a class action." *Id.* Thus, the plaintiffs lack standing to pursue the Title III claims of all persons that qualify as disabled under the ADA. The plaintiffs lack standing to assert any ADA claims beyond those related to hearing, visual, and mobility impairments. To the extent plaintiffs assert Title III claims for disabilities beyond these three categories, such claims are DISMISSED.

### 2.  Standing to Bring State Law Claims

Even if the Court were to assume, *arguendo*, that the plaintiffs had standing to assert the Title III claims of all disabled persons, the plaintiffs would still lack standing to assert all of the state law claims held by members of the class.

The proposed class definition includes claims that arise under state laws that are analogous to Title III of the ADA. Again, as a threshold matter, the plaintiffs must demonstrate their standing to assert these claims in their own right; absent such a showing, the plaintiffs cannot assert the state claims on behalf of others. *See O'Shea*, 414 U.S. at 494. However, the plaintiffs have presented absolutely no evidence of their standing to assert a claim under the laws of any state other than Florida. It is undisputed that the two individual plaintiffs and the Association are Florida residents. Yet, these plaintiffs seek to adjudicate any and all claims arising under the accessibility laws of every other state and the District of Columbia. For instance, plaintiffs seek to adjudicate all claims that may arise under TEX. HUM. RES. CODE ANN. § 121.001 *et seq.*, the Texas state accessibility statute. However, the plaintiffs have presented no evidence that any of them suffered an injury in fact under Texas law at the time this suit was

filed. There is no allegation or evidence that either the individual plaintiffs or the Association's members have ever visited Texas, or suffered any discriminatory treatment at a 7-11 located in Texas. In fact, there is no evidence that the plaintiffs, including the Association's members, have ever been to a 7-11 outside the state of Florida.[3] Thus, plaintiffs have failed to demonstrate any injury in fact under the laws of any state other than Florida. As such, plaintiffs lack a personal stake in the outcome of the various state law claims they seek to adjudicate. *See, e.g., Simon*, 426 U.S. at 38. As plaintiffs have failed to demonstrate they have standing to raise a claim under the laws of any state other than Florida, they cannot raise state claims other than those from Florida on behalf of others. *See O'Shea*, 414 U.S. at 494. The plaintiffs lack standing to assert state law accessibility claims apart from those based on Florida law. To the extent plaintiffs assert state accessibility claims beyond the applicable Florida law, such claims are DISMISSED.[4]

---

[3]The Complaint and evidence before the Court raise only an inference, at best, that the named plaintiffs visited a 7-11 in the state of Florida prior to filing this suit. However, the Court assumes, for purposes of this opinion only, that the plaintiffs have visited 7-11s in Florida and suffered discriminatory treatment at those 7-11 stores in violation of Title III of the ADA and similar Florida statutes.

[4]This holding is consistent with the general rule that federal class action settlements may release state law claims. *See, e.g., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) (noting that "a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint."). Courts have broad discretion in releasing potential claims in the context of a class action settlement. For instance, even if the Court lacks the power to adjudicate a claim, the Court may approve the release of that claim as a condition of settlement. *See Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 376-77 (1996); *Corrugated Container*, 643 F.2d at 221. However, even with this broad discretion, the referenced authorities do not authorize this Court to release claims by way of a settlement that the plaintiffs would have no standing to raise in any court. *See id.* This is consistent with the general rule that class actions are not to be used as back doors to gain standing. *See* 1 NEWBERG § 2.06. To hold otherwise would essentially allow the parties to adjudicate claims through the release clause of a class settlement that Article III precludes them

## IV. CLASS CERTIFICATION

The Court finds that the named plaintiffs have not satisfied the class certification requirements of Rule 23. Standing principles are related to the typicality, commonality, and adequacy of representation requirements under Rule 23. *See* 1 NEWBERG § 2.05. Rule 23(a)(2) requires that the class share common issues of law and fact. Rule 23(a)(3) requires that the named plaintiffs' claims be typical of the class claims. Rule 23 requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Vuyanich v. Republic Nat. Bank of Dallas*, 723 F.2d 1195, 1199 (5th Cir. 1984) (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 156 (1982)). "In addition, a class representative must 'possess the same interest and suffer the same injury' as the class members." *Id.* (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974)).

As discussed with regard to standing, the named plaintiffs share neither the same interest nor the same injury as all members of the class. With regard to the ADA claims, plaintiffs' Title III claims related to hearing, visual, and mobility impairments do not fairly encompass Title III claims based on other disabilities. To use the parlance of Rule 23, plaintiffs' claims are neither common nor typical of claimants that may assert Title III claims based on disabilities other than the plaintiffs'. As for the state law accessibility claims, the plaintiffs have not suffered an injury in fact under the laws of any state other than Florida; therefore, the plaintiffs do not possess claims typical of those who may claim they have suffered injuries under the accessibility laws of states other than Florida.

---

from adjudicating before the Court.

V.    **CONCLUSION**

For the foregoing reasons, class certification is **DENIED** on the merits and the proposed

consent decree is **DISAPPROVED**.

SO ORDERED.

DATED: April ___, 2002.

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

11